RAMÍREZ *v.* THE AMERICAN RAILROAD COMPANY OF PORTO RICO.

APPEAL from the District Court of Mayagüez.

No. 670.—Decided April 25, 1911.

DAMAGES—NEGLIGENCE PER SE.—The mere fact of a train's running at a great velocity is not negligence *per se* provided the same is consistent with the safety of the passengers; neither is it such negligence when the train runs at a greater speed than that fixed in the time-table, if it be shown that in establishing said speed it was done for the safety of the passengers and not from any other circumstance independent thereof. In these cases it must be proven that the velocity of the train, considering the conditions of the locality, was inconsistent with the safety of the passengers.

ID.—INDEMNITY THAT MUST BE ALLOWED.—In claims of damages for negligence the indemnity must not be restricted to the expenses which the accident may have occcasioned to the plaintiff, but the latter having alleged and proven that he had sustained damages which cannot be valued in dollars and cents the judge must estimate the same in order to fix the amount of the indemnity, for in actions of this character the sufferings and probable consequences of the accident constitute an element determining the damages that serve as ground for the claim.

APPEAL—EVIDENCE—CREDIBILITY OR PARTIALITY OF A WITNESS.—The credibility or partiality of a witness may be investigated in the cross-examination, and the parties have a right to make all such cross-questions as may lead to that object; however, when one party is not permitted to propound cross-questions tending thereto, though not absolutely denied the right to prove such point, but is allowed to do so by means of other evidence, the error is not sufficient to justify a reversal of the judgment.

ID.—CONSIDERATION OF CONTRADICTORY EVIDENCE.—The finding of the court below in cases of contradictory evidence must be accepted by the appellate court unless it be proven that the former was actuated by passion, prejudice, or partiality, or that it committed manifest error.

The facts are stated in the opinion.

*Mr. N. B. K. Pettingill* and *Fernando Vázquez* for appellant.

*Mr. J. E. Benet* for respondent.

MR. JUSTICE ALDREY delivered the opinion of the court.

The plaintiff alleges as material facts in support of her claim against the defendant that on March 15, 1910, she was traveling as a passenger on a train of the defendant company from Mayagüez to San Germán, and that after leaving the Filial Amor station the engineer conducted the locomotive of said train in a careless manner, running the engine

with a most extraordinary disregard for the safety of the passengers, at a greater speed than customary or at which said train can be run on the tracks of the defendant company owing to the numerous curves and sidetracks in that section of the road and to the deplorable condition in which the defendant keeps its tracks, cars, and rolling stock. This led to the derailment of the train and overturning of the passenger cars, in consequence of which the plaintiff was thrown out of her seat to the ground and received several wounds on her arms, neck, head, and shoulders, which gave rise to a great nervous disturbance and abundant hemorrhage, and confined her to her bed for over a fortnight. This was followed by a great prostration and weakness, and her periods of menstruation have been abnormal ever since, which occasioned expenses in doctors and medicines, all through the fault and negligence of the defendant, for which she claims $1,000 as damages and costs.

The defendant company in its answer admitted the derailment and upsetting of the passenger cars on the day and at the place specified in the complaint, denied all the other averments thereof, and prayed that the complaint be dismissed.

The evidence of fault or negligence produced by the plaintiff consisted of the testimony of several witnesses, some of whom testified that when the train went off the track it was running at great speed, and others that the speed was excessive and more than the customary one.

Only one witness, Mr. Manes, second chief of the Insular police at the time the accident occurred, testified further that he had had several years of experience in the construction and operation of railroads, and that he was also perfectly acquainted with the handling of locomotives. He said that on the day to which the complaint refers he was traveling on that train, and that when the alarm caused by the derailment and overturning of the cars had subsided he made an investigation for the purpose of determining the cause of the accident. He found that at the place where it had happened a

guard rail had disappeared which had stood in front of a switch and that this had been the cause of the derailment and overturning of the cars, for the marks of the rails on the crosstie showed that the guard rail had not been properly placed. He had placed hundreds of guard rails, but none so weakly and badly secured. That guard rail, he said, had been secured only with nails to the wooden crossties, but it had none on the other side, nor were there any screws to hold it fast.

The testimony of the witnesses with regard to the velocity of the train cannot serve as basis for determining culpability or negligence, because, being so vague and indefinite, it is impossible to ascertain from them the number of miles run by the train at a given time and because said testimony depends on the individual estimate of each witness.

Moreover, the mere fact of a train's running at a great velocity is not negligence *per se* provided the same is consistent with the safety of the passengers; neither is it such negligence when the train runs at a greater speed than that fixed in the time-table if it be shown that in establishing said speed it was done for the safety of the passengers and not from any other circumstance independent thereof. (See Cyclopedia of Law and Procedure, vol. 33, pp. 791 and 792, notes.)

What should have been proven was that the velocity of the train, considering the condition of the locality, was inconsistent with the safety of the passengers.

Hence, the only evidence in this case upon which culpability or negligence on the part of the defendant company may be estimated is the testimony of Mr. Manes, who attributes the accident to the faulty fixing of a guard rail at the place of the occurrence. No evidence in rebuttal was presented, and if he told the truth there exists either culpability or negligence.

The party defendant attempted to assail the credibility of this witness by means of cross-questioning. He had testified in the direct examination that after the accident he had had a quarrel with Mr. Villar, an employe of the defend-

ant company, and that he had ordered the arrest of the employes of the train.

He was then questioned by the company: "After you had intervened in all this, what happened to you with some employe of the company?"

The plaintiff having excepted to this cross-question, the court did not permit it to be put unless it were shown that it had something to do with the matter. Thereupon the attor-. ney for. the defendant stated that he wanted to bring out the partiality or impartiality of the witness, because the latter afterwards had had a serious quarrel with the employe in charge of the train, and later the company had lodged. a complaint against the witness and obtained judgment against him.

The court then decided: "If desired, this may be proven by other evidence, but not by questions now." The defendant entered an exception.

The credibility or partiality of a witness may be inves--tigated by means of cross-questions, and the defendant had a right to ask questions tending to that end, which right was denied him.

These cross-questions are always important, and with greater reason when a material fact is sought to be proven by only one witness. However, we shall not order a new trial, for he was not absolutely denied the right to prove such point, but was allowed to do so by means of other evidence of which he could dispose in this case, because when it is a question of a complaint and condemnation these must appear in a public record.

The court below believed the testimony of the witness, Mr. Manes, which is sufficient for determining culpability or negligence on the part of the defendant company and, consistently with our decision on other occasions, we shall not alter this finding, for it has not been shown to us that the lower court was actuated by passion, prejudice, or partiality, or that it had committed manifest error. The plaintiff stated

in her testimony at the trial that when she fell she had received injuries on her shoulder, ribs, brains, head, and abdomen; that she had also become nervous, and having afterwards gone to a house in San Germán she had had there a vaginal hemorrhage, two or three days in advance of her menstrual period; then she was ill for about a fortnight in the house of her parents, being attended by a midwife to whom she had paid from $32 to $35, and, besides, had spent $14 in medicines; that since said accident she does not feel as well as before, and that, although her menstrual periods have become normal, she is now obliged to lie in bed for four or five days with symptoms she had not previously felt.

The testimony of said witness is the only evidence upon these points, and although in some particulars thereof the evidence is contradictory, yet the judge of the lower court, who heard all the evidence and saw the plaintiff and heard her statement, decided the conflict by giving credence to her words, and concluded that the disorders experienced by her were due to the accident, wherefore we should not alter this decision for the reasons hereinbefore stated with reference to the witness, Mr. Manes.

There is left for decision only the question as to whether the court should have given judgment merely for $46 or $49 of indemnity for expenses defrayed by the plaintiff, or whether it could render judgment for $500, as it did.

The plaintiff has alleged and proved not only the expenditure of $46 or $49, but that she has suffered damages that cannot be estimated in terms of dollars and cents and which the judge may and should determine in order to fix the amount of the indemnity, for in actions like the one exercised in the present case the indemnity should not be confined to the money spent or left unearned, but account may be had of the probable sufferings and consequences of the injury.

So has this court already held in the case of *Alejandro Díaz* v. *San Juan Light and Transit Co.,* decided January 20, 1911, wherein it is said:

"This same Supreme Court, in the aforesaid case of *Zalduondo* v. *Sánchez,* expressed itself through Mr. Justice Wolf in the following terms: 'The court below, from the testimony, might have inferred that complainant was unconscious for five days; that he was in bed ill for some 20 or 25 days; that he bore deep wounds the scars of which were still to be seen at the time of the trial (for they were examined by Dr. Goenaga); that the complainant suffers from buzzing in his ears, from a loss of memory, and other symptoms, and is threatened with some form of insanity. How far and how long or at what times the complainant might be affected in his work or in his life as a result of the appellant's acts it is impossible to foretell. It cannot be precisely determined, but it may be fixed by the trial court within reason. No mention is made in the testimony of the mental suffering that the complainant might have undergone, which is likewise a recognized element of damages in all suits of this nature.' The Supreme Court of the United States has so recognized it in the case of *McIntyre* v. *Giblin,* 131 U. S., CLXXIV.

"Without deciding the question of whether punitive damages are recoverable, we think that the trial court did not overestimate the reasonable and probable actual damages sustained by the complainant when it fixed them at $1,000, and the judgment of the trial court must be affirmed.

"Applying the foregoing principles and those contained in section 1804 of the Revised Civil Code to the specific case under consideration we find that in the complaint it is alleged that the complainant sustained damages which he estimates at $6,000, and that the immediate and natural cause of said damages was the careless act of one of the employes of the defendant, who was in his service and while in the discharge of his duties.

"The evidence taken does not show that the complainant failed to earn, as a result of the injuries received, a stated sum of money, or that he had to pay the physician who attended him another stated sum, etc.; but it does show that the complainant, a man 51 years of age, who worked as a farmer, and hawked about his products, supporting himself and his family with his labor, while stepping out of one of the electric cars of the defendant at Stop 7½ of the San Juan-Río Piedras line, fell to the ground owing to the carelessness and inattention of the motorman in starting the car before it was time; that he received a severe blow which rendered him unconscious for some moments, fractured his lower jaw, and caused abrasions on his legs and other parts of his body: that he remained at the hospital

having his injuries nursed for more than one month, and that, on being examined at the trial—that is, one year and five months after his fall—he presented on the right side of his face, as a consequence of the fracture, 'a contraction which means a paralysis,' and could 'speak, but hardly masticate, and only with difficulty could open and close his mouth.' It does not appear from the evidence that the complainant has been disabled, but it does appear that at the time the evidence was taken he was suffering from nervous illness, according to the opinion of Dr. Stahl, one of the experts who testified at the trial.

"Under these circumstances the judge, in accordance with the law and jurisprudence, had to estimate for himself the damage caused and determine the amount of indemnification which the defendant should pay the complainant. And in so doing the court did not commit the errors attributed to it by the appellant.

"The question in the present case is not one of punitive or exemplary damages, but of compensation for damages sustained. In order to allow such compensation it is not necessary that the complainant should prove his loss in terms of dollars and cents, it being sufficient in cases of this nature to prove that the plaintiff, through the fault or negligence of the defendant, and not through his own fault and negligence, had sustained a real damage, consisting of physical pains, loss of work, confinement in a hospital, mental sufferings, etc.

"The indemnification in this case was fixed by the lower court at $2,000, and although it could perhaps have been calculated at less we do not find that it is immoderately inadequate, and this being so, we should not alter it."

Such doctrine is applicable to this case, because no doubt the judge took into account the nature of the damage sustained by the plaintiff, the consequences whereof do not end with an immediate illness but may be protracted over a long period of time.

For all these reasons, and as the sum allowed for indemnity does not appear to us to be excessive, the judgment should be affirmed in each and every one of its parts.

*Affirmed.*

Chief Justice Hernández and Justices MacLeary, Wolf, and del Toro concurred.